## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**JOHN ROBERT HAGAN**                                                              **PLAINTIFF**

**v.**                                                                      **No. 3:24-cv-113-BJB**

**DENISE BARNETT, ET AL.**                                                        **DEFENDANTS**

*****
### MEMORANDUM OPINION & ORDER

  This lawsuit involves two disputed property sales—one involving the childhood home of *pro se* Plaintiff John Robert Hagan, and another involving a different house and land at 2125 Monks Road in New Haven, Kentucky. Hagan alleges that Denise Barnett, acting as his father's power of attorney, breached her fiduciary duty, exercised undue influence, and fraudulently conveyed these properties—both of which Hagan expected to inherit. Complaint (DN 1) at 9–11. In addition to Barnett, Hagan also sued Marie Imogene Robinson, the buyer of the childhood home (whose address isn't specified in the complaint), and Tim and Marie Elaine Bartley, the buyers of 2125 Monks Road. The Defendants, Hagan maintains, all conspired to divert property from his father (who suffered from dementia and Parkinson's) while Hagan was imprisoned. *See id.* at 10; *see also* Response (DN 15) at 4 ("[T]he defendants conspired together and …. obtained the real property in question by misrepresentation, undue influence, and trickery.").

  The motion and order now at issue concern the Monks Road transaction. The Bartleys moved to dismiss all claim(s) against them,[1] arguing that this Court lacks jurisdiction. Hagan's Complaint invokes this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States"). Although the Bartleys don't contest diversity of citizenship among the parties, they

---

[1] It's unclear which claims in Hagan's Complaint correspond to the Bartleys. He identifies four defendants and raises four claims—breach of fiduciary responsibility, contract malformation, fraudulent conveyance, and undue influence—but refers to the Bartleys only within one of those claims: the contract claim. *See* Complaint at 9–11. As the Bartleys' motion recognizes, "[t]here is no claim by Hagan that the Bartleys had any fiduciary duty to Hagan's father or that they (rather than Barnett) exercised any undue influence over Hagan's father." Bartleys' Memorandum of Law (DN 13-1) at 2. This seems correct on the surface, and Hagan hasn't responded to this point. But neither have the Bartleys moved to dismiss these *pro se* claims under Rule 12(b)(6) for failure to state a claim—only for lack of subject-matter jurisdiction under Rule 12(b)(1). Whether some or all of the substantive claims run against the Bartleys doesn't appear to bear on the amount in controversy.

maintain that the amount in controversy with Hagan doesn't exceed $75,000 as required. Motion to Dismiss (DN 13) at 1.

Hagan disagrees, asserting that the amount in controversy is $600,000: $150,000 in actual damages and $500,000 in punitive damages.[2] Complaint at 7. That obviously exceeds the $75,000 threshold. But the Bartleys say that only $42,000 (the amount Hagan says the house was worth—not the $4,100 they paid for it) is really at stake. Bartleys' Memorandum of Law at 3. The question for this Court is whether Hagan's demand is in bad faith or *clearly* unavailable as a matter of law. "[I]f a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (citation omitted). And "[w]hen a plaintiff seeks punitive damages, that amount counts toward the amount in controversy unless it is 'apparent to a legal certainty' that the plaintiff cannot recover them." *Merolla v. MoneyGram Int'l, Inc.*, No. 5:22-cv-81, 2024 WL 1361912, at *4 (W.D. Ky. Mar. 29, 2024) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001)).

Kentucky law allows a plaintiff to recover punitive damages from a defendant who acted towards the plaintiff with "oppression, fraud, or malice."[3] *See* KRS § 411.184(2). Hagan has alleged fraud against the Bartleys, whom he says "obtained the real property in question by misrepresentation, undue influence, and trickery."

---

[2] Hagan's Complaint (at 7) requests actual and punitive damages. His Response to the Bartleys' motion to dismiss, however, adds attorneys' fees in calculating the amount in controversy. *See* Response at 6. Why a *pro se* plaintiff would merit attorneys' fees remains unclear. But the Court needn't address that since punitive and actual damages alone suffice to establish diversity jurisdiction. The Court can also bracket the question whether any damages related to the childhood home or other defendants contribute to the total. In diversity cases, a plaintiff generally cannot aggregate amounts in controversy across co-defendants—except if suing defendants who are jointly and severally liable. *See, e.g.*, *Legacy Health Servs., Inc. v. Union Ins. Co.*, No. 5:21-cv-79, 2021 WL 4812549, at *5 (W.D. Ky. Oct. 14, 2021). Whether that's the case here is again unclear and, at least for now, irrelevant to resolving this motion.

[3] According to KRS § 411.184(1):

> "(a) 'Oppression' means conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship.
>
> (b) 'Fraud' means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff.

The Kentucky Supreme Court held the statute's definition of "malice" (§ 411.184(1)(C)) unconstitutional, *see Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998), and Hagan pleads only fraud—not oppression or malice.

Response at 4. Hagan alleges that "the conveyances … were fraudulent and structured to improperly divert [his father's] assets rather than protect his interests." Complaint at 10. Read generously, Hagan's theory of the case—neighbors and agents defrauding the incarcerated son of a demented father—at least superficially describes the sort of scheme that could support punitive damages. *See, e.g., Bierman v. Klapheke*, 967 S.W.2d 16, 19–20 (Ky. 1998) (punitive damages under KRS § 411.184 based on fraud by lawyer who lied to conceal neglect of client's claims); *Anderson v. Old Nat'l Bancorp*, 675 F. Supp. 2d 701, 719 (W.D. Ky. 2009) (punitive damages under KRS § 411.184 based on trustees' concealment meant to injure plaintiffs).

The $500,000 in punitive damages sought by Hagan needn't be fully credited to reach the jurisdictional minimum; even a modest award of punitive damages (accepting the $42,000 home valuation rather than more aggressive and unsupported $150,000 actual-damages demand) would satisfy the amount in controversy. After applying "a conservative 2:1 ratio of punitive damages to compensatory damages," the value of Hagan's controversy with the Bartleys jumps "well over the threshold amount, [even] without consideration of attorneys' fees." *See Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 473 (6th Cir. 2019); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (endorsing a 4:1 ratio between punitive and compensatory damages). So tacking punitive damages onto the value Hagan assigns to the property—$42,000, *compare* Complaint at 9*, with* Bartleys' Memorandum of Law at 3—places this controversy within the Court's jurisdiction.

Because it's possible, after factoring in potential punitive damages, for Hagan to recover over $75,000, the Court declines to dismiss his action against the Bartleys on amount-in-controversy grounds.

## ORDER

The Court denies the Bartleys' motion to dismiss (DN 13).